3. SAME—INJUNCTION.
　　Where the life tenant of real estate fails to pay taxes, and the tenant in
　　remainder has a remedy in an° action to procure the appointment of a
　　receiver of so much of the income of the property as is necessary to pay
　　the taxes, a temporary injunction, staying the sale of the property for
　　unpaid taxes, should not be granted.

Appeal from special term, Montgomery county.

Action by Lillie Seibold Sage against the city of Gloversville
and O. L. Everest, chamberlain of the city of Gloversville, implead-
ed with others. From an order granting a temporary injunction,
defendants city of Gloversville and O. L. Everest, chamberlain, ap-
peal. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUT-
NAM, and MERWIN, JJ.

Frank Talbot, for appellants.
Roswell R. Moss, for respondent.

LANDON, J. We think the injunction order should be reversed
as to the city of Gloversville and the defendant its chamberlain.
The taxes were duly imposed, payment was in default, and the
notice of the sale of the real estate on account of such default was
strictly regular. It is true that, as between the defendant Woo-
ster, who is the life tenant, and the plaintiff, who, with other de-
fendants, is a tenant in remainder, the life tenant should pay the
ordinary taxes. But the plaintiff, as tenant in remainder, has her
remedy in a proper action to procure the appointment of a receiv-
er of so much of the rents and income of the real estate as are
necessary to pay off and discharge the taxes in arrear, unless the
life tenant, within a short day, to be fixed by the court, pay and
discharge them. Cairns v. Chabert, 3 Edw. Ch. 312; Sidenberg v.
Ely, 90 N. Y. 257, 264. As such receiver can be authorized to col-
lect the rents and pay them on the taxes, there seems to be no ob-
jection to the plaintiff, as she professes a willingness to do, ad-
vancing the receiver the money for that purpose, in order to pre-
vent the sale; the receiver afterwards reimbursing her from the
rents and income. If the life estate should terminate before suffi-
cient amounts for reimbursement should be received, the deficit
could be charged as upon the whole property. The plaintiff, in
her notice of motion, asked for the appointment of a receiver, but
none was appointed.

Order reversed as to the appellants, with $10 costs and disburse-
ments, without prejudice to the renewal of plaintiff's motion at
special term for the appointment of a receiver. All concur.

___

(29 Misc. Rep. 151.)

AUCHINCLOSS v. MANHATTAN RY. CO.

(Supreme Court, Special Term, New York County. October, 1899.)

ELEVATED RAILROAD—DAMAGES TO ABUTTING PROPERTY—DETERMINATION.
　　Damages to abutting property caused by the construction of an elevated
　　railroad are not to be found merely in the fact that it has not been as
　　fully benefited as other property which has taken the benefits without

accompanying detriment; and, conceding that the rents would be higher if the road was not directly in front of it, the determining question is whether there would be any increase if it was wholly removed.

Action by Henry B. Auchincloss against the Manhattan Railway Company for an absolute injunction against defendant's maintenance of a third track, and for an alternative injunction against the maintenance of the remainder of its road, and for damages. Complaint dismissed.

J. Aspinwall Hodge, Jr., and Henry De Forest Baldwin, for plaintiff.

Edward C. James, Charles A. Gardiner, and William H. Godden, for defendant.

BISCHOFF, J. The action affects the premises situated on the northwest corner of Seventy-Eighth street and Columbus or Ninth avenue, and differs from the ordinary action of an abutting owner for injunctive relief only in that here it is sought, in addition to the alternative injunction against the use and maintenance of the railroad so far as it has admittedly legislative and municipal sanction, to obtain an absolute injunction restraining the use and maintenance of the third track, as to which it is claimed the defendants are without authority whatever. That, upon the facts now presented, the defendants have authority to use and maintain the third track, was held by Mr. Justice Ingraham in Mayor, etc., v. Manhattan Ry. Co., N. Y. Law J., Feb. 7, 1894; and, did I incline to a contrary view, it would notwithstanding appear to be incumbent upon me to follow the adjudication alluded to, until the question has been definitely passed upon by the appellate court, because of the very serious annoyances which are certain to ensue if the use of this third track, to which the public are accustomed and upon which they have come to rely, be suddenly interrupted. And, furthermore, because of my conclusion that the plaintiff has failed to show substantial damage as a resultant of the presence of the defendants' railroad, from which it follows that he is not entitled to any relief in this action, but should be remitted to his remedy at law, a re-examination of the question bearing upon the defendants' authority for the use and maintenance of its third track implies, at the present time, mere supererogation.

Prior to the advent of the defendants' elevated railroad the locality of the premises was practically unimproved, and the actual effect of the road was to bring about a general building up of the territory, a great increase of population, with a natural opening up of trade, and an extended enhancement of real estate values throughout the district affected. Any decrease in the fee value of the plaintiff's premises by reason of this railroad it is impossible to show, and the action is therefore based upon what is claimed to be a loss of rental value, from which loss an injury to the fee is sought to be inferred; and the whole damage is claimed to result from the injury done by the presence of the railroad, over and above the benefits conferred. The premises consist of a large apartment house, and it is true that the apartments which do not directly overlook the railroad are found more desirable, and hence more valuable, than those which do; and

it would appear that if the railroad were upon the next avenue, rather than where it is, the plaintiff would secure a greater rental from his building, as a whole, than he can collect under existing conditions. But at the same time it is quite clear that the increase of values off the line of the road was due to the road itself, and damage is not to be found merely in the fact that property abutting on the road has not been as fully benefited as has other property which has taken the benefits without any accompanying detriment. Granting that the plaintiff's rentals would be higher if the elevated railroad were not directly in front of his premises, the question is whether there would be the same, or any, increase if the railroad were altogether removed from the vicinity; and this is the real question in the case, and upon which the right to the relief sought depends. The evidence, to my mind, leads irresistibly to the conclusion that defendants' elevated railroad remains the main reliance of travelers between the point in question and the centers of business of population, notwithstanding that several surface railroads have followed the defendants' railroad and afford fair means of transit. In the absence of all evidence tending to show that such was actually the result upon the removal of the defendants' railroad, or of some other railroad, in at least one particular instance, it would appear to involve, not a syllogism defensible either in reason or logic, but the barest speculation and conjecture, to assert against the facts that the defendants' elevated railroad was a potent factor in the rapid building up of the territory, the increase of population, and the consequent opening up of trade and great enhancement of real-estate value in the district in which the plaintiff's premises are situated, thus affording strong inducement for later and increased transit facilities to enter the same territory, that upon the advent of such later transit facilities the presence of the defendants' railroad became a detriment to abutting property, in that it operated to prevent the property from further increasing in value. The removal of defendants' elevated railroad from so much of the avenue as is immediately in front of the plaintiff's premises will, of course, rid the premises of the physical effects of the railroad, but such removal self-evidently involves the extinction of the railroad through that district; and the vice of the plaintiff's contention, therefore, is that I am asked to assume, without justification, that upon the discontinuance of the railroad all its past benefits to the district generally, and to the plaintiff's premises particularly, will remain unimpaired, since it is only upon such an hypothesis that it can be fairly argued that the removal of the defendants' railroad will operate to further enhance the premises in value. It seems to my mind to be against every reasonable inference to say that the defendants' railroad is no longer of advantage to this district, and incidentally to the plaintiff's premises, upon the facts above stated; and while it may be conceded that the later surface railroads carry many passengers, and so render the course of travel less congested, and even render the district more accessible from other directions, it cannot be fairly said, with any degree of certainty, or even of probability, that they have become a substitute for the defendants' railroad, and would or could preserve the benefits which the latter had

conferred upon the plaintiff's premises in common with other property in the same district, if it were now removed. The reasonable inference, it seems to me, is that at the present time the removal of the defendants' railroad would not be compensated for by such facilities as the surface railroads would afford; and it is but natural and unstrained to assume that where the value of property depends, in any way, upon means of transit, the removal of any one of several existing means would be detrimental to that value. The views expressed lead, of course, to a dismissal of the complaint. Defendants should have costs, and an extra allowance, to be fixed upon the settlement of the decision or judgment.

Complaint dismissed, with costs.